**CENTRAL TRANSPORT, INC., et al.**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREA PENSION FUND, et al.**

**No. CIV–2–85–470.**

United States District Court,
E.D. Tennessee,
Northeastern Division.

March 5, 1986.

See also 639 F.Supp. 788.

Patrick A. Moran, Fredric A. Smith, Birmingham, Mich., Ron Woods, Greeneville, Tenn., Frank Cummings, Washington, D.C., for plaintiff.

Diana L.S. Peters and Russell N. Luplow, Bloomfield Hills, Mich., Fred D. Thompson, and Penny Harrington, Nashville, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This action came before the Court for a hearing on plaintiffs' motion for summary judgment. The Court has carefully considered the record and the oral arguments made by counsel and finds that the plaintiffs' motion for summary judgment is well taken for the reasons hereinafter set out.

The plaintiffs, Central Transport, Inc., et al, contend that since their purchase of Mason and Dixon Lines stock was contingent upon ICC approval pursuant to the provisions of both their stock purchase agreement and 49 U.S.C. § 11343, they did not own or control Mason and Dixon Lines or Tank Lines on the date of decertification of Tank Lines on December 31, 1983 as a matter of law, because ICC approval was not received until January 4, 1984. Therefore, plaintiffs have moved for summary judgment that they are not liable for withdrawal liability.

The defendant, Pension Fund, in its brief contends that three facts are undisputed: (1) Central Transport and GLS LeasCo are affiliates and are the wholly-owned subsidiaries of plaintiff, CenTra, Inc.; (2) Mason and Dixon Tank Lines was and still is the wholly-owned subsidiary of Mason and Dixon Lines; and (3) by virtue of two stock

purchase agreements dated November 29, 1983, Central Transport and GLS LeasCo acquired the exclusive right to purchase (together) one hundred percent (100%) of the stock of Mason and Dixon Lines and Mason and Dixon Tank Lines. Defendant's brief further acknowledges that (a) Central Transport, Inc. received temporary authority from the ICC in regard to this sale on January 4, 1984 with permanent authority being received from ICC on March 7, 1984; and (b) prior to their acquisition by Central Transport, Inc., and GSL LeasCo, Crown Enterprises, Mason and Dixon Lines, and Mason and Dixon Tank Lines were owned and controlled by members of the King family of Kingsport, Tennessee.

Based upon these facts, and by applying the provisions of 26 U.S.C. § 414(c), the defendant contends that the withdrawal liability assessment of $26,000,000.00 against the plaintiffs, Central Transport, Inc., et al, was proper. The defendants further contend that based on the theory of constructive ownership, as set out in 26 U.S.C. § 414(c), Tank Lines was a member of the "controlled group" consisting of the plaintiffs on December 31, 1983 by virtue of the stock purchase agreement executed on November 29, 1983.

Although the defendant is correct that whether or not plaintiffs, Central Transport, Inc., et al, had constructive ownership of Mason and Dixon Lines stock will be dispositive of liability, based upon the stock purchase agreement and the undisputed facts of the case as given by the defendant, the application of 26 U.S.C. § 414(c) as argued by the defendant would still entitle the plaintiffs to summary judgment. Although § 414(c) is applicable to this case, a thorough examination of several statutes as well as applicable case law is necessary to reach a final decision in this matter.

The provisions of 29 U.S.C. § 1301(b)(1) in regard to Pension Benefit Guaranty Corporations provide:

> For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which

are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under *section 414(c)* of Title 26. (emphasis added).

In turn, 26 U.S.C. § 414(c) provides that corporations which are under common control shall be treated as employed by a single employer and states that:

> The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (b).

In referring to 26 U.S.C. § 414(b), a controlled group of corporations is defined as within the meaning of section 1563(a), determined without regard to section 1563(a)(4) and (e)(3)(C). Therefore, the definitions and special rules as given under 26 U.S.C. § 1563 are applicable to controlled group plan termination liability.

The applicability of § 1563 has also been discussed in *Pension Ben. Guaranty Corp. v. Quimet Corp.*, 711 F.2d 1085, 1094 (1st Cir.1983), *cert. denied*, 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983), in which the Court states:

> The principles of I.R.C. § 1563(a)(2) are relevant to controlled group plan termination liability because ERISA defines an employer in terms of the regulations promulgated under I.R.C. § 414(c). 29 U.S.C. § 1301(b)(1) (Supp. V 1981); *see supra* note 6 (text of provision). I.R.C. § 414(c) and the related regulations define controlled groups of businesses using the principles of the I.R.C. § 1563 definitions. *See* generally Comment, *Extending ERISA Liability for Pension Plan Termination to Controlled Group Members: Pension Benefit Guaranty Corp. v. Quimet Corp.*, 61 B.U.L.Rev. 477, 491–02 (1981) (suggesting that the difference between section 1563 and section 414 is that the latter encompasses unincorporated as well as incorporated

entities in the controlled group definitions and thus includes Trust).

In the case at bar, because the defendant contends that stock ownership is dispositive, 26 U.S.C. § 1563(d)(1), which specifically deals with both direct and constructive ownership of *stock* is more on point than § 11.414(c)-4, which generally defines ownership of *"interests."*

The applicable rules to determine stock ownership under § 1563(a), as set out in 26 U.S.C. § 1563(d)(1), are as follows:

> Parent-subsidiary controlled group.—For purposes of determining whether a corporation is a member of a parent-subsidiary controlled group of corporations (within the meaning of subsection (a)(1)), stock owned by a corporation means—
>
> (A) stock owned directly by such corporation, and
>
> (B) *stock owned with the application of subsection (e)(1).* (emphasis added).

Stock ownership under 26 U.S.C. § 1563(e)(1) is defined as follows:

> (e) Constructive ownership.—
>
> (1) Options.—If any person has an option to acquire stock, such stock shall be considered as owned by such person. For purposes of this paragraph, an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

In the case at bar, the defendant contends that withdrawal liability would be properly assessed against the plaintiffs, Central Transport, Inc., *et al*, by virtue of its constructive ownership of one hundred percent (100%) Mason and Dixon Lines stock, because plaintiff's stock purchase agreement executed on November 29, 1983 was an option.

The Court in *Mid-America Industries, Inc. v. United States*, 341 F.Supp. 597 (D.C.Ark.1972) reversed on other grounds 477 F.2d 1029 (8th Cir.1973), has defined the term "option" to purchase stock for the purposes of determining a "controlled group" under 26 U.S.C. § 1563(e)(1). In finding that a "Condition" was not an op-

tion under § 1563(e)(1) because certain contingencies existed over which the holder of the "Condition" had no control, the Court held "that to constitute an option to purchase stock, the rights in question must enable the holder to purchase the stock 'presently at his election'." *Mid-America Industries, Inc., supra,* at 607.

In the case at bar, pursuant to both the stock purchase agreement and 49 U.S.C. § 11343, ICC approval was a specific contingency in regard to the purchase of Mason and Dixon Lines, Inc.; and the plaintiff had no control of this contingency. Therefore, under the facts of this case, the stock purchase agreement was not an option; the plaintiffs had no constructive ownership of Tank Lines; and there can be no resulting withdrawal liability on the basis of the defendants' theory of constructive ownership.

In the event that the Court had adopted the view that the stock purchase agreement was in fact an option, the defendant's case would still fail if 26 U.S.C. § 1563(f)(3)(B) and the I.R.C. regulations applicable to controlled groups and options are applied. The special rules of 26 U.S.C. § 1563(f)(3)(B) provide:

If stock is owned (within the meaning of subsection (d) by *two or more persons,* such stock shall be considered as owned by the person whose ownership of such stock results in the corporation being a component member of a controlled group. If by reason of the preceding sentence, a corporation would (but for this sentence) *become a component member of two controlled groups, it shall be treated as a component member of one controlled group.* The determination as to the group of which such corporation is a component member shall be made under regulations prescribed by the Secretary which are consistent with the purposes of this part. (emphasis added).

Under 26 CFR § 1.1563–3(d), the special rule in regard to § 1563(f)(3)(B) is given as follows:

(2) *Component member of more than one group.*

(i) If, by reason of subparagraph (1) of this paragraph, a corporation would (but for this subparagraph) become a component member of more than one controlled group on a December 31, such corporation shall be treated as a component member of only one such controlled group on such date. The determination as to which group such corporation is treated as a component member of shall be made in accordance with the rules contained in subdivisions (ii), (iii), and (iv) of this subparagraph.

(ii) In any case in which a corporation is a component member of a controlled group of corporations on a December 31 as a result of treating each share of its stock as owned only by the person who owns such share *directly,* then each such share shall be treated as owned by the person who owns such share *directly.* (emphasis added).

The following example is given to illustrate the application of this rule:

*Example (1):* Jones owns all the stock of corporation X and has an option to purchase from Smith all the outstanding stock of corporation Y. Smith owns all of the outstanding stock of corporation Z. Since the Y stock is considered owned by two or more persons, under subparagraph (2)(ii) of this paragraph the Y stock is treated as owned only by Smith since he has direct ownership of such stock. 26 CFR § 1.1563–3(d)(3).

Therefore, assuming that Central Transport, Inc., *et al,* did, in fact, have constructive ownership by virtue of an option to purchase Mason and Dixon stock and Tank Lines, and that the King family had direct ownership of this stock and Tank Lines, pursuant to 26 U.S.C. § 1563(f)(3)(B) and 26 CFR § 1.1563–3(d)(2)(ii), Tank Lines can only be in one controlled group and would be considered to be a component member of a controlled group of corporations held by the King family because the King family was the *direct* owner of the stock in question on December 31, 1983. Consequently, withdrawal liability would properly be assessed against the King family's

controlled group rather than the plaintiffs, Central Transport, Inc., *et al.*

The defendant also contends that in the event that an equitable construction of § 414(c) is applied pursuant to the guidelines of *In re Challange Stamping and Porcelain Co.*, 719 F.2d 146 (6th Cir.1983), which seems to require a showing of actual control, that equities would also dictate the assessment of withdrawal liability against the plaintiffs. Inasmuch as this issue has been pretermitted, because an equitable construction of § 414(c) has not been applied in this case, the necessity of the defendant showing actual control of Mason and Dixon Lines by the plaintiffs is not necessary to reach a decision in regard to withdrawal liability. However, based upon the briefs and argument of counsel, the entire record, including various depositions and affidavits, as well as the fact that temporary authority to take control of Mason and Dixon Lines was not granted to the plaintiff by the ICC until January 4, 1984, the Court finds that actual control was not established by the defendant on the part of the plaintiffs as of December 31, 1983. Therefore, the plaintiffs would still be entitled to summary judgment on the issue of withdrawal liability using the defendant's equitable theory.

It is, therefore, the ruling of the Court that the stock purchase agreement did not constitute an option; that Tank Lines was not a component member of the controlled group of corporations on December 31, 1983 held by Central Transport, Inc., *et al;* that the plaintiffs, Central Transport, Inc., *et al,* are consequently not liable for the withdrawal liability amount assessed; and that the plaintiffs' Motion for Summary Judgment is well taken and is hereby GRANTED.