816 F.2d 678
 8 Employee Benefits Ca 2519
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CENTRAL TRANSPORT, INC.; Bancroft Trucking Company; C.T.
Transport, Inc.; C. T. Transport, Inc.; Centra, Inc.;
Central Cartage Company, Inc.; Central-On- Line Data
Systems, Inc.; Central Recapping, Inc.; The Crown
Enterprises, In..; Cruiser Tours, Inc.; AMBRI, Inc.;
Flint Cartage Company; GLS Leasco, Inc.; General Highway
Express Company; McKinlay Transport, Ltd.; Michigan
Express, Inc.; Mohawk Motor, Inc.; Port Side Transport,
Inc.; Roethlisberger Transfer Superior Forwarding Company,
Inc.; Consolidated Forwarding; and Mohawk Cartage,
Plaintiffs-Appellees,
V.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND
and Loran W. Robbins; Marion M. Winstead; Robert C.
Sansone; R. Jerry Cook; Howard McDougall; Robert J.
Baker; R. V. Pulliam, Sr.; and Arthur H. Bunte, Jr., in
Their Capacity as Trustees of Central States, Southeast and
Southwest Areas Pension Fund, Defendants-Appellants.
 Nos. 86-5222, 86-5599.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1987.
 
 Before JONES, KRUPANSKY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendants, Central States, Southeast and Southwest Areas Pension Fund and its Trustees (the defendants or the Fund), appealed from the district court's orders granting a preliminary injunction and summary judgment in favor of the plaintiffs, twenty-two companies, all of which were admittedly under common control prior to November 29, 1983, in this action challenging the Fund's assessment of over $26 million in pension withdrawal liability pursuant to the Multiemployer Pension Plan Amendments Act of 1980 (the MPPAA).
 
 
 2
 For purposes of the MPPAA, all employees of trades or businesses which are under common control, known as a controlled group, are treated as if they were employees of a single employer consisting of all of the commonly controlled businesses. The MPPAA authorizes multiemployer pension funds such as the defendant to assess "withdrawal liability" for unfunded vested benefits against all companies witbin a controlled group upon the withdrawal of any one of the companies within the controlled group from participation in the particular fund. Withdrawal liability is calculated upon the aggregate contribution history of all members of the controlled group. A partial withdrawal from the fund occurs when a single participating company of a controlled group permanently ceases to have an obligation to contribute into the fund under one or more but fewer than all collective bargaining agreements under which that single company had previously been obligated to contribute.
 
 
 3
 The record in the instant case disclosed that on November 29, 1983, two of the plaintiffs, Central Transport, Inc. (Transport) and its affiliate GLS LeasCo, Inc. (LeasCo), executed two stock purchase agreements with the shareholders of Mason & Dixon Lines, Inc. (Mason & Dixon), whereby Transport and LeasCo acquired the exclusive contractual right to purchase all of the outstanding shares of Mason & Dixon's stock, as well as that of its wholly owned subsidiary, Mason & Dixon Tank Lines, Inc. (Tank Lines). Consummation of the stock purchase was contingent upon the ultimate approval of the transaction by the Interstate Commerce Commission (ICC). On December 31, 1983, Tank Lines, the subsidiary of Mason & Dixon, incurred partial withdrawal liability under the MPPAA by virtue of the expiration and nonrenewal of a collective bargaining agreement between it and five of its employees, represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America Local Union No. 71 (Local 71), under which agreement Tank Lines had previously contributed to the Fund. On January 4, 1984, Transport received ICC temporary authority to operate Mason & Dixon, subject to further ICC review, which operational control it assumed on January 9, 1984. Permanent ICC authority to operate Mason & Dixon was granted to Transport on March 7, 1984 together with approval of the stock acquisitions, which stock purchase agreements with Mason & Dixon were not ultimately consummated until February 1 and 2, 1985.
 
 
 4
 Between the dates of July 22 and August 31, 1985, the defendant Fund assessed plaintiffs Transport, LeasCo, and the other plaintiff members of the controlled group for partial withdrawal liability in an amount in excess of $26 million, calculated upon the aggregate unfunded vested benefits and contribution history of all plaintiffs. The withdrawal liability was assertedly triggered on December 31, 1983 with the expiration of the collective bargaining agreement between Tank Lines and five of its employees, represented by Local 71, and the failure to renew the collective bargaining agreement due to the employees' earlier decertification of Local 71 as bargaining agent. The plaintiffs challenged the assessment administratively and also initiated this action in federal district court, while the Fund sought to initiate arbitration of the matter as provided by the MPPAA. The district court in a published decision initially granted the plaintiffs' motion for a preliminary injunction enjoining the Fund from proceeding to arbitration of the dispute. Central Transport, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 639 F.Supp. 788 (E.D. Tenn. 1986). The district court reasoned that the traditional criteria governing the issuance of preliminary injunctive relief, more particularly the probability of success on the merits of the controversy and the likelihood of irreparable harm, weighed heavily in favor of the plaintiffs, and further concluded that the controlling issues joined by the pleadings were legal and not factual and were, accordingly, not properly the subject of arbitration under the M PPAA.
 
 
 5
 In a second published decision, the district court granted summary judgment in favor of the plaintiffs. Central Transport, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 640 F.Supp. 56 (E.D. Tenn. 1986). The dispositive substantive issue before the district court was the status of Tank Lines as a member of the plaintiff controlled group on the date of Tank Lines' partial withdrawal from the defendant Fund on December 31, 1983, and the consequent partial withdrawal liability, if any, that attached to all members of the plaintiffs' controlled group as a result of Tank Lines' partial withdrawal from the Fund.' The district court observed that, despite the execution of the stock purchase agreements between Transport, LeasCo, and Mason & Dixon on November 29, 1983 prior to the date of Tank Lines' withdrawal from the Fund on December 31, 1983, the ICC had not issued to Transport and LeasCo either the requisite operational control over mason & Dixon and Tank Lines nor had it ultimately approved the stock acquisitions as required by law until January 4 and March 7, 1984, respectively. The district court concluded that, absent actual operational control and actual or constructive ownership of Mason & Dixon's and Tank Lines' stock by Transport and LeasCo, rank Lines was not a member of the plaintiffs' controlled group on the withdrawal date, and the plaintiffs were therefore not subject to withdrawal liability.
 
 
 6
 The Fund's separate notices of appeal from the two decisions of the district court have been consolidated into the instant appeal. Having examined the record on appellate review in its entirety and having considered the briefs and arguments of the parties, this court is of the view that the district judge correctly identified the considerations applicable to disposition of the instant dispute. Accordingly, for the reasons articulated in its published opinions, the judgment of the district court is AFFIRMED.
 
 
 7
 ---------------
 
 
 
 1 It was conceded by the parties that Tank Lines and Mason & Dixon had incurred partial withdrawal liability as a result of the action between Tank Lines and Local 71 on December 31, 1983.